IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MMG PRCI CFL, LLC.,**
    Plaintiff,

v.                                                    Civil No. 19-1461 (BJM)

**BMF, INC.** *et al.*,
    Defendants.

## OPINION AND ORDER

Plaintiff PRCI Loan CFL LLC ("PRCI Loan") sued defendants BMF Inc. ("BMF"), Orlando Mayendía-Diaz ("Mayendía-Diaz"), Julio Blanco-D'Arcy ("Blanco-D'Arcy"), Wanda Méndez-Quiñones ("Méndez-Quiñones"), Andrew Bert Foti-Tallenger ("Foti-Tallenger"), and Eva Judith Pagán-Burgos ("Pagán-Burgos") (collectively "Defendants"). Dkt. 1. This court has diversity jurisdiction over this matter. PRCI Loan alleged that BMF breached a mortgage contract and that the remaining defendants were guarantors who are liable for BMF's breach. *Id.* at ¶¶ 26–29. PRCI Loan also requested I order a public auction of the mortgaged property if defendants failed to repay the debt within fourteen days of the court's order. *Id.* ¶ 31. PRCI Loan further included Puerto Rico and the United States as defendants because both governments have filed tax liens against the mortgaged property. *Id.* ¶ 34. BMF subsequently filed for bankruptcy. Dkt. 46. After the notes at issue were transferred to MMG PRCI CFL, LLC ("MMG"), PRCI Loan moved to substitute MMG in its place, Dkt. 66, and I granted that motion. Dkt. 71.

PRCI Loan, now MMG, moved for summary judgment against Defendants. Dkt. 67. Blanco-D'Arcy and Méndez-Quiñones opposed and cross-motioned for partial summary judgment seeking dismissal of the claims against them, Dkt. 75, and MMG opposed. Dkt. 90. No other defendants responded. This case is before me on consent of the parties. Dkt. 63. For the following reasons, PRCI Loan, now MMG's, motion for summary judgment is **GRANTED**. Blanco-D'Arcy and Méndez-Quiñones's motion for partial summary judgment is **DENIED.**

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions and presented in the light most favorable to the nonmoving party. *See, e.g.*, *In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 29 (1st Cir. 2016). I have omitted portions of the proposed facts that state conclusions of law or that I deem irrelevant, but I otherwise resolve any conflicts between the parties' versions of events in favor of the nonmoving party.

On December 21, 2001, for value received, BMF executed a note in favor of Westernbank Puerto Rico for $5,500,000.00 plus variable interest at prime rate for the first sixty months and fixed interest at prime rate for the next three hundred months, adjusted every sixty months, to be paid in consecutive monthly installments of principal and interest starting on January 24, 2002. Dkt. 67-3 at 1–6. Also on December 21, Mayendía-Díaz, Blanco-D'Arcy, Méndez-Quiñones, Foti-Tallenger, and Pagán-Burgos signed guarantees for any amounts BMF owed to Westernbank. Dkts. 67-11, 67-12, 67-13. Blanco-D'Arcy and Méndez-Quiñones's guarantee covered "any other debt of any kind that presently, or hereafter, is due or owed to [Westernbank], by borrower or borrowers." Dkt. 67-12 at 1. BMF has also pledged two mortgage notes, dated October 3, 1997 and January 30, 2004 respectively, as security for the amounts owed. *Id.* at 1; Dkt. 67-8 at 4. The parties amended the loan agreement in April 2004. Dkt. 22-1 at 6–11. In addition to the guarantees, BMF also secured its debt by pledging a chattel mortgage over equipment described in an attached financing statement. Dkt. 67-10.

In 2006, Blanco-D'Arcy and Méndez-Quiñones sold their shares, rights, and responsibilities in BMF to three other defendants in this action, Mayendía Díaz, Foti-Tallenger and Pagán-Burgos, for one dollar and notified Westernbank of this transaction through a certified letter that included a request to be relieved of all personal guarantees. Dkts. 76-1 & 78-1; Dkt. 76-

2 ¶ 6. Westernbank does not appear to have responded. Westernbank later sold the notes to Banco Popular de Puerto Rico. Dkt. 22-4 ¶ 5.

In 2011, Banco Popular, then holder of the notes, filed a Puerto Rico state court case against Defendants ("the Puerto Rico state case"). Dkt. 22 at 7. In January 2012, BMF asked the federal bankruptcy court in Puerto Rico for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* Dkt. 76-4 at 1. In October 2012, Banco Popular and BMF filed a joint stipulation to resolve the bankruptcy case. Dkt. 22-4.

The joint stipulation states it does not "constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of the parties under any of the Loans or the loan documents" and BMF "ratifies, reaffirms, confirms, consents to and acknowledges all of the terms, priority and conditions of security interests, mortgages or liens over the Collateral provided for in the Loans, the Collateral, and the BPPR Claims, as well as the Debtor's obligations." Dkt. 22-4 at 6. The stipulation also says that, within 15 days of its approval, Banco Popular and BMF would request the Puerto Rico state case be dismissed without prejudice and "[a]s part of such dismissal, the parties shall ratify all guarantees and credit agreements, and the terms of this Stipulation." Id. ¶ 8.

In March 2014, Banco Popular and BMF jointly moved for dismissal without prejudice of the Puerto Rico state case per the stipulation approved by the Bankruptcy Court, and the Puerto Rico state court complied. Dkts. 76-3, 78-2. During an April 2014 hearing, the Puerto Rico state court judge noted that the stipulation and resulting judgment were limited to BMF and ordered Banco Popular to clarify its position regarding the remaining defendants. Dkt. 76-5. Banco Popular responded by requesting dismissal without prejudice against the remaining defendants and the Puerto Rico state court entered a judgment accordingly on April 23, 2014. Dkt. 76-6. Blanco-

D'Arcy and Méndez-Quiñones never negotiated the joint stipulation filed with the bankruptcy court, nor its amendments before the Puerto Rico state court, and they never ratified any related agreements or guarantees. Dkt. 76-2 ¶¶ 11–17.

In 2019, PRCI Loan instituted the present action for collection of monies and foreclosure of the mortgaged property. Dkt. 1. The defendants responded as follows: Blanco-D'Arcy and Méndez-Quiñones filed an answer, Dkt. 41; BMF filed an answer, Dkt. 42; and Foti-Tallenger and Pagán-Burgos filed an answer. Dkt. 43. MMG is currently the owner of the notes and mortgage deeds described above and they are recorded in the Registry of Property. Dkt. 67-6 at 7, 67-9 at 2. BMF is the owner of the mortgaged property according to the Registry of Property. Dkt. 67-9 at 1. After MMG took possession of the notes and mortgage deeds, PRCI Loan filed a motion to substitute MMG it its place, Dkt. 66, which was granted. Dkt. 71. PRCI Loan, now MMG, then filed a motion for summary judgment, Dkt. 67, and Blanco-D'Arcy and Méndez-Quiñones opposed. Dkt. 75. In their opposition, Blanco-D'Arcy and Méndez-Quiñones also cross motioned for partial summary judgment to dismiss all claims against them, Dkt. 75, which MMG opposed. Dkt. 90.

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes

demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S.
317, 323 (1986).

   The court does not act as trier of fact when reviewing the parties' submissions and so cannot
"superimpose [its] own ideas of probability and likelihood" upon conflicting evidence, no matter
how reasonable those ideas might appear. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932,
936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to
the party opposing summary judgment, indulging all reasonable inferences in that party's favor."
*Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary
judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving
party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that
there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable
inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d
5, 8 (1st Cir. 1990). "To defeat a properly supported motion for summary judgment, the nonmoving
party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a
finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st
Cir. 1993) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## DISCUSSION

### 1.  **MMG's Motion for Summary Judgment**

   MMG argues that in December 2001 BMF executed a note in favor of Westernbank Puerto
Rico for $5,500,000.00 plus variable interest at prime rate for the first sixty months and fixed
interest at prime rate for the next three hundred months, adjusted every sixty months, to be paid in
consecutive monthly installments of principal and interest starting in January 2002. Dkt. 67-1 ¶

26. MMG also asserts BMF pledged two mortgage notes as security for the amount owed. Id. ¶¶ 27–28. BMF admits it signed the note in favor of Westernbank, and pledged the two mortgage notes. Dkt. 42 ¶¶ 11, 15, 17. It is further undisputed that Mayendía-Díaz, Blanco-D'Arcy, Méndez-Quiñones, Foti-Tallenger, and Pagán-Burgos signed and delivered guarantees for all amounts BMF owed Westernbank. Dkt. 67-1 ¶ 33; Dkt. 76 ¶ 14. I will evaluate MMG's motion with respect to the various defendants below.

### A. BMF, Mayendía-Diaz, Foti-Tallenger, and Pagán-Burgos

None of these parties responded to MMG's motion for summary judgment. The "'entry of a summary judgment motion as unopposed does not automatically give rise to a grant of summary judgment' because the district court still must consider the [non-moving party's] claim based on the record properly before the court, viewing the uncontested facts in the light most favorable to the non-moving party." *Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209, 212 (1st Cir. 2008) (quoting *Aguiar-Carrasquillo v. Agosto-Alicea*, 445 F.3d 19, 25 (1st Cir.2006)). BMF signed the note in favor of Westernbank, and pledged the two mortgage notes. Dkt. 42 ¶¶ 11, 15, 17. Mayendía-Díaz, Foti-Tallenger, and Pagán-Burgos executed guarantees for all amounts BMF owed Westernbank. Dkt. 67-1 ¶ 33; Dkt. 76 ¶ 14.

Puerto Rico law governs this diversity action. In Puerto Rico, "obligations arising from contracts have legal force between the contracting parties and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994. Absent extreme circumstances, courts may not relieve a party of its obligations to do whatever it agreed to do by contract. *See Cervecería Corona v. Commonwealth Ins. Co.*, 115 P.R.D. 345 (1984). When one party to a bilateral contract does not fulfill its commitment, the other may choose between specific performance of the contract or damages and receive interest in either case. 31 L.P.R.A. § 3052.

A mortgage is an "obligation secured by real property that is duly recorded in the Property

Registry." 13 L.P.R.A. § 30294. Debts and mortgages are distinguished as follows:

> Any given debt can give rise to a personal action for collection of monies which
> may eventually be executed upon personal or any other property of the debtor.
> These proceedings will be filed against the debtor and the prayer for relief is limited
> to money. The mortgage, on the other hand, is the guarantee which gives rise to a
> mortgage foreclosure suit to collect from the very property that secured the debt.

*Chicago Title Ins. Co. v. Sotomayor*, 394 F. Supp. 2d 452, 460 (D.P.R.2005). "A secured creditor

may take legal action to collect on a debt and enforce the pledge if not timely satisfied." *DLJ*

*Mortg. Capital, Inc. v. Jesus-Santa*, 2016 WL 3365396, at *2 (D.P.R. June 16, 2016) (alteration in

original).

The parties entered a mortgage contract. BMF, Mayendía-Diaz, Foti-Tallenger, and Pagán-

Burgos have presented no evidence disputing the validity of the contracts at issue here or

arguments as to why they should be relieved of their contractually agreed to obligations. They

have further presented no evidence that they have fulfilled their end of the bargain. As such, PRCI

Loan, now MMG, is entitled to summary judgment in its collection of monies claim with respect

to these defendants.

For the foregoing reasons, MMG's motion for summary judgment against BMF,

Mayendía-Diaz, Foti-Tallenger, and Pagán-Burgos is **GRANTED.**

### B. Blanco-D'Arcy and Méndez-Quiñones

In its motion, MMG asserts that defendants failed to raise any controversies regarding the

debt at issue in this case in their answers to the complaint. Dkt. 67-1 ¶ 35. That is incorrect. In

their answer, Blanco-D'Arcy and Méndez-Quiñones denied responsibility for the debt at issue in

this case because they sold all their shares in BMF in 2006 and were not a part of a subsequent

settlement in bankruptcy court, which they argue supersedes the original agreement. Dkt. 41 ¶ 24.

MMG does not address these contentions in its motion for summary judgment. Blanco-D'Arcy

and Méndez-Quiñones opposed MMG's motion for summary judgment and contend they are entitled to partial summary judgment dismissing the claims against them. Dkt. 75. They argue MMG's summary judgment motion was a defective filing, MMG calculated the amount owed based on loans not at issue in this action, and they have no connection to the debtor, BMF, because they sold their shares in BMF to other defendants in this matter in 2006. *Id.* MMG responded that the guarantee did not allow Blanco-D'Arcy and Méndez-Quiñones's to terminate their liability by selling their shares in BMF. Dkt. 90. Further, MMG argued the guarantee allowed its predecessor-in-interest and BMF to agree to the joint stipulation without notifying Blanco-D'Arcy and Méndez-Quiñones. *Id.* I will address the parties' arguments in turn.

### i.    *Defective Filing*

Blanco-D'Arcy and Méndez-Quiñones argue MMG's summary judgment motion was defective under Local Rules 7.1 and 56 because MMG did not file its statement of uncontested material facts and memorandum of law separately and because it did not cite specific pages in the record following its assertions of facts. Dkt. 75 ¶ 50. Particularly, they take issue with fact number 1 in MMG's motion because MMG did not present the required disclosure statement pursuant to Local Rule 7.1 upon its first appearance and they argue nothing in the record can verify MMG's identity, parent company, subsidiaries, or affiliates. *Id.*

Local Rule 56 states:

> A motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted in the statement shall be supported by a record citation as required by subsection (e) of this rule.

D.P.R. R. 56(b). MMG filed its memorandum of law and statement of uncontested material facts as two separate exhibits to its motion for summary judgment. *See* Dkt. 67-1 and 67-2. Blanco-D'Arcy and Méndez-Quiñones cite no case law indicating that this is unacceptable. If a party's

filing does not comply with Local Rule 56, the court has discretion regarding how to proceed. *See Caban Hernandez v. Philip Morris USA, Inc.*, 486 F.3d 1, 7 (1st Cir. 2007). "Rules like Local Rule 56 are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." *Caban Hernandez.*, 486 F.3d 1, 8 (1st Cir. 2007). Because Blanco-D'Arcy and Méndez-Quiñones cite no court that has disregarded a memorandum of law or statement of uncontested material facts submitted as exhibits, and I had little trouble locating these documents, I disregard their argument that the documents must have been filed separately.

Next, I turn to Blanco-D'Arcy and Méndez-Quiñones's assertion that MMG failed to cite specific pages in the record following its assertions of facts 1 through 5, 10, 16, and 17. Facts 1 through 5 are identifications of the parties. Blanco-D'Arcy and Méndez-Quiñones do not dispute the veracity of any of this information except for their contention that fact 1 lacks support in the record. Fact 10 indeed lacks a citation to the record. Facts 16 and 17 respectively assert a lack of controversy regarding the existence of loan documents and a lack of a settlement by the defendants. It is unclear what part of the record MMG could cite to support its contention that these two items do not exist.

Blanco-D'Arcy and Méndez-Quiñones mainly take issue with fact 1, which identifies MMG, because MMG had not filed the required disclosure statement pursuant to Local Rule 7.1 and there was thus no way to verify its identity. Dkt. 75 ¶ 50. Rule 7.1 states, "[a]ny nongovernmental corporate party shall file a statement identifying all parent companies, subsidiaries and affiliates that have issued shares to the public. The statement shall be filed with a party's first appearance." D.P.R. R. 7.1. This mirrors Fed. R. Civ. P. 7.1. As discussed, MMG was substituted for PRCI Loan after a motion by the latter. Dkt. 66 & 71. I ordered MMG to file a

disclosure pursuant to Fed. R. Civ. P. 7.1 and D.P.R. R. 7.1, Dkt. 85, and it did so. Dkt. 87. Because this argument is now moot, it does not preclude granting summary judgment in favor of MMG.

### ii.    *Calculation of Amount Owed*

Additionally, Blanco-D'Arcy and Méndez-Quiñones argue that MMG calculated the amount owed based on agreements that are not at issue in this action. Dkt. 75 ¶¶ 52–53. Specifically, they cite an unsworn declaration that reads, "MMG PRCI CFL is the owner of the Mortgage Notes of $1,250,000.00 and $1,300,000.00, executed on October 3, 1997 and January 30, 2004, respectively, subscribed by BMF, Inc, the defendant in the above-captioned case." Dkt. 67-14 at 2 ¶ 4. MMG submitted documents corroborating this claim. Dkts. 67-6 & 67-8. In its complaint, PRCI Loan also stated BMF pledged these two mortgage notes to secure payment of its loan agreement, originally with Westernbank. Dkt. 1 ¶¶ 15–18. It submitted copies of these agreements with the complaint as well. Dkts. 1-3 & 1-4. Thus, contrary to Blanco-D'Arcy and Méndez-Quiñones's contention, these agreements appear very much at issue in this action and therefore relevant to MMG's calculation of the amount it is owed.

### iii.    *Sale of Shares*

Next, Blanco-D'Arcy and Méndez-Quiñones assert they sold their shares, rights, and responsibilities in BMF to three other defendants in this action (Mayendía Díaz, Foti-Tallenger and Pagán-Burgos) and notified Westernbank of this transaction. Dkt. 75 ¶ 55. As a result, they contend the buyers assumed responsibility for the personal guarantees that Blanco-D'Arcy and Méndez-Quiñones made regarding the loan at issue in this case. *Id.* This contention is documented by a sales contract Blanco-D'Arcy and Méndez-Quiñones submitted with their statement of uncontested material facts. Dkts. 76-1 & 78-1 (English translation). MMG responds that Blanco-

D'Arcy and Méndez-Quiñones could not evade liability under their guarantee agreement by selling their shares of BMF. Dkt. 90 at 14–15.

A valid contract requires consent of the parties, a definite object which is the subject of the contract, and the cause for the obligation which may be established. 31 L.P.R.A. § 3391. Consent is present because the parties signed the contract. Blanco-D'Arcy and Méndez-Quiñones sold their right to profit from BMF, and recoup their investments in the company, to Mayendía Díaz, Foti-Tallenger, and Pagán-Burgos for one dollar and the latter trio's assumption of responsibility for outstanding debts guaranteed by Blanco-D'Arcy and Méndez-Quiñones. Thus, Blanco-D'Arcy and Méndez-Quiñones's contract to sell their shares, and obligations to Mayendía Díaz, Foti-Tallenger and Pagán-Burgos is a valid contract.

However, this contract directly conflicts with the guarantee contract Blanco-D'Arcy and Méndez-Quiñones signed with Westernbank. By signing a guarantee, "a person binds himself to pay or perform for a third person in case the latter should fail to do so." 31 L.P.R.A. § 4871. A guarantee is a contract and "the validity and fulfilment of contracts cannot be left to the will of one of the contracting parties." 31 L.P.R.A. § 3373. In Puerto Rico, though contracts may be modified by substitution of the debtor, such a modification "can only take place with the creditor's consent." *Tchrs. Annuity v. Soc. de Gananciales*, 115 P.R.D. 277, 282, 15 P.R. Offic. Trans. 372, 378 (1984). "[C]onsent must be certain and positive and must be given with the deliberate purpose of releasing the original debtor from his obligations and allocating them fully upon the new debtor." *Id.* (finding consent could not be inferred where creditor sent letter to new debtor reminding them of obligation and accepted several monthly payments from them).

Here, Blanco-D'Arcy and Méndez-Quiñones informed Westernbank that Mayendía Díaz, Foti-Tallenger, and Pagán-Burgos would assume the former's obligations under the guarantee

contract and Westernbank never responded. Dkt. 75 ¶ 6. This inaction cannot be construed as "certain and positive" consent to this attempted novation. *See Tchrs. Annuity.* 115 P.R.D. at 282, 15 P.R. Offic. Trans. at 378. Because Westernbank, and the subsequent debtholders, never consented to this attempted substitution of debtors, it does not bind the debtholders. Thus, evidence that Blanco-D'Arcy and Méndez-Quiñones sold their shares in BMF along with their responsibilities as guarantors for the corporation does not preclude summary judgment in favor of BMF.

### iv.    *Novation*

Blanco-D'Arcy and Méndez-Quiñones argue any obligations they had were extinctively novated through the 2012 joint stipulation Banco Popular and BMF agreed to during BMF's bankruptcy case. Dkt. 75 ¶¶ 56–57.

An extinctive novation extinguishes the old obligation and creates a new one. *Nieves Domenech v. Dymax Corp.*, 952 F. Supp. 57, 62 (D.P.R. 1996). It is never presumed, instead, it must be established "without any trace of doubt." *Id.* It may occur in one of two ways. 31 L.P.R.A. § 3242. First, the parties may expressly state their intention to create a new agreement. *Ballester Hermanos, Inc. v. Campbell Soup Co.*, 797 F. Supp. 103, 107 (D.P.R.1992). In this case, there will be an extinctive novation even though the original agreement has only been modified slightly. *Id.* Alternatively, an extinctive novation may occur through a new agreement that is incompatible with the original one. *Nieves Domenech* 952 F. Supp. at 62. The new agreement must be absolutely incompatible "in all points" to the original. *Id.* (quoting *Ballester Hermanos*, 797 F. Supp. at 107). The new and old agreements must be so radically different that they are unable to coexist, and are thus mutually excludable. *Id.* (citing *Francisco Garraton, Inc. v. Lanman & Kemp–Barclay*, 559 F. Supp. 405, 407 (D.P.R.1983)). The mere modification of a principal condition of the agreement

will not, by itself, constitute an extinctive novation unless the parties expressly state their intention

to novate. *Id.* (citing *Fed. Deposit Ins. Corp. v. P.L.M. Int'l Inc.*, 834 F.2d 248, 251 (1st Cir.1987)).

Novation "is always a question of intention" such that the parties' intention prevails over the words

of the agreement. *Warner Lambert Co. v. Tribunal Superior*, 101 P.R.D. 378 389–90, 1 P.R. Offic.

Trans. 527, 544–45 (1973).

> Here, the joint stipulation states:

> *this agreement is not intended to constitute an extinctive novation* . . . of the obligations and undertakings of the parties under any of the Loans or the loan documents regarding such Loans, as amended to date. Debtor hereby ratifies, reaffirms, confirms, consents to and acknowledges all of the terms, priority and conditions of security interests, mortgages or liens over the Collateral provided for in the Loans, the Collateral, and the BPPR Claims, as well as Debtor's obligations under such loan documents.

Dkt. 22-4 at 6 (emphasis added). The plain language of this agreement thus suggests it was not a

novation as Blanco-D'Arcy and Méndez-Quiñones contend. Thus, Blanco-D'Arcy and Méndez-

Quiñones can prevail only if the new agreement is incompatible with the original one. *See Nieves*

*Domenech* 952 F. Supp. at 62.

> Parties face a high bar when arguing that a novation occurred in the absence of an express

intent to novate. Altering an agreement to increase the rate of commission is insufficient to

constitute an extinctive novation. *See Ballester Hermanos, Inc.*, 797 F. Supp. at 107 (discussing

*Warner Lambert Co*.). An express novation could occur where the new agreement changed the

corporate entity named as distributor, prohibited the distributor from doing business with clients

of the principal within six months of the agreement's termination, extended the territory to be

served by the distributor, and reduced the term for notification of unilateral termination. *Id.*

(discussing *Marina Industrial, Inc. v. Brown Boveri Corp.*, 114 P.R.D. 64, 14 P.R. Offic. Trans.

*MMG PRCI CFL, LLC. v. BMF, Inc. et al.*, Civil No. 19-1461 (BJM)                    14

86 (1983)). However, absent an express novation, "these changes by themselves would not be sufficient to produce an extinctive novation because they are not 'totally incompatible.'" *Id.*

Here, Blanco-D'Arcy and Méndez-Quiñones argue the joint stipulation states the parties to it shall ratify all guarantees and credit agreements pertaining to BMF, but does not mention the personal guarantees by third parties such as themselves. *Id.* ¶ 57 (citing Dkt. 22-4 ¶ 8). Because these guarantees are unmentioned, and because their approval of the agreement was not sought, Blanco-D'Arcy and Méndez-Quiñones assert the agreement constituted an extinctive novation of their obligations thus relieving them of any liability. *Id.* MMG counters that Blanco-D'Arcy and Méndez-Quiñones's guarantee allowed BMF and its creditor to alter the terms of the loan without ratification by the guarantors.

Blanco-D'Arcy and Méndez-Quiñones's fail to meet the high bar required to show an implied extinctive novation. As discussed, intent is the touchstone of this inquiry. The agreement expressly states that it is not intended to be an extinctive novation. Blanco-D'Arcy and Méndez-Quiñones do not address how their understanding of the agreement is consistent with this language. They do not address this language at all. Instead, they contend that "the intention of the parties to the joint stipulation was, as expressed in the document, to finalize litigation between Banco Popular and BMF, Inc. and promote the eventual reorganization of BMF, Inc. before the Bankruptcy Court exclusively." Dkt. 75 ¶ 57. Even crediting that argument, I fail to see how that goal is absolutely incompatible "in all points" with BMF's previous agreement to pay its debt secured by the guarantors. It is presumably possible for Banco Popular to enter a payment plan with BMF without waiving its right to collect payment from the debt's guarantors, especially given the express language stating the restructuring did not amount to an extinctive novation of the previous agreement.

Blanco-D'Arcy and Méndez-Quiñones argue that further evidence of the parties' intent to novate can be found in the Puerto Rico state case. Specifically, they assert the state court noted that the agreement only occurred between Banco Popular and BMF and that Banco Popular dismissed its claims against them and the other guarantors without prejudice. Dkt. 75 ¶ 58–59. This argument is also unconvincing. Again, they do not explain why an agreement between Banco Popular and BMF implicitly constitutes a novation, thus absolving them of liability, when the document explicitly states otherwise. Further, "a voluntary dismissal without prejudice leaves the parties as if the action had never been brought and renders the proceedings a nullity." *Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 45 (1st Cir. 1990). Again, that does not indicate a change in the relationship between Banco Popular, Blanco-D'Arcy, and Méndez-Quiñones absolving the latter two of their previous guarantees of BMF's debt.

### v.    Ratification

Blanco-D'Arcy and Méndez-Quiñones argue Banco Popular and BMF, Inc. needed to secure the ratification of the guarantees, particularly those signed by third parties not included in their negotiations and settlements, and the failure to do so relieved them of liability. Dkt. 75 ¶ 59. The joint stipulation states "the parties shall ratify all guarantees and credit agreements, and the terms of this Stipulation" as part of their request for voluntary dismissal in the Puerto Rico state case. Dkt. 22-4 ¶ 8. There is no evidence that the parties did so with respect to Blanco-D'Arcy and Méndez-Quiñones's guarantee. However, their guarantee states they:

> [A]gree that [Westernbank] pay, [sic] from time to time, or at any moment at [its] criteria and discretion . . . settle or make arrangements with borrower or borrowers or any other person responsible for the same, over all or any instruments, loans, advances, credits or other obligations, guarantees by virtue of this instrument or postpone or subrogate the payment of the same, or any part of them, to the payment of any other debt or claim that may be owed to you or any other person or corporation at any time . . . in the form and manner, and under the terms and

conditions that you may deem most convenient, *without the need of notification* nor ulterior assent on the part of signatory or signatories . . .

Dkt. 67-12 at 1 (emphasis added). This language seems to suggest no notification, much less ratification, was required.

Blanco-D'Arcy and Méndez-Quiñones do not address this language. Instead, they argue the joint stipulation supplanted the original loan agreement and the failure to obtain their ratification of the stipulation terminated their guarantee of the original agreement. Dkt. 75 ¶¶ 57–60. They argue a settlement agreement "must not alter the respective terms whereby the debtor and the surety are bound, unless with his own consent and that of the creditor." *Id.* at 12 n.1 (quoting *Garcia v. The Commonwealth Ins. Co.*, 118 D.P.R. 380, 392, 18 P.R. Offic. Trans. 454, 469 (1987)). Thus, they contend, a settlement agreement may only bind parties to that agreement. However, in addition to the original loan, Blanco-D'Arcy and Méndez-Quiñones's guarantee covers "any other debt of any kind that presently, or hereafter, is due or owed to [Westernbank], by borrower or borrowers." Dkt. 67-12 at 1. Blanco-D'Arcy and Méndez-Quiñones do not explain how the debt described in the joint stipulation falls outside of this broad language and I fail to see why it would.

Further, Blanco-D'Arcy and Méndez-Quiñones's guarantee stated the creditor could "extend or change the payment date, the form, place and condition of payment of all or any of such instruments, loans, advances, credits and any other obligations, or any part or parts of the same." *Id.* This is precisely what Banco Popular and BMF did in the alternate payment plan outlined by the joint stipulation. *See* Dkt. 22-4. The *Garcia* court reasoned that guarantors should not be on the hook for a different debt than the one they originally promised to secure without their knowledge and consent. *See Garcia*, 118 D.P.R. at 391, 18 P.R. Offic. Trans. at 468. That concern is addressed here because, unlike the surety in *Garcia* who solely guaranteed the payment of a

specific, disputed claim, Blanco-D'Arcy and Méndez-Quiñones effectively guaranteed all BMF's future debts to Westernbank, later Banco Popular and MMG, and waived the notification requirement. Further, their guarantee explicitly contemplated the actions Banco Popular and BMF took pursuant to the joint stipulation. Thus, the joint stipulation between BMF and Banco Popular did not obligate Blanco-D'Arcy and Méndez-Quiñones to secure a fundamentally different debt without their knowledge and consent. As such, it did not require their ratification to be enforced against them.

For the foregoing reasons, MMG's motion for summary judgment against Blanco-D'Arcy and Méndez-Quiñones is **GRANTED.**

   2. **Blanco-D'Arcy and Méndez-Quiñones's Motion for Partial Summary Judgment**

Because MMG's motion for summary judgment against Blanco-D'Arcy and Méndez-Quiñones is granted, their motion for partial summary judgment is **DENIED.**

## CONCLUSION

For the foregoing reasons, PRCI Loan, now MMG's, motion for summary judgment against Defendants is **GRANTED**. Blanco-D'Arcy and Méndez-Quiñones's motion for partial summary judgment is **DENIED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of December 2022.

S/ *Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge